**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| SUBSCRIBERBASE HOLDINGS, INC., a South Carolina corporation, | ) | |
| SUBSCRIBERBASE, INC., a South Carolina corporation, | ) | Case No. 13-cv-1527 |
| JEFFREY FRENCH, individually and as an officer of SUBSCRIBERBASE HOLDINGS, INC. and SUBSCRIBERBASE, INC., | ) | |
| ALL SQUARE MARKETING, LLC, a California limited liability company, | ) | |
| THREADPOINT, LLC, a California limited liability company, | ) | |
| PC GLOBAL INVESTMENTS, LLC, a California limited liability company, | ) | |
| SLASH 20, LLC, a Delaware limited liability company, | ) | |
| BRENT CRANMER, individually and as an officer and manager of ALL SQUARE MARKETING, LLC, PC GLOBAL INVESTMENTS, LLC, and SLASH 20, LLC, | ) | |
| CHRISTOPHER MCVEIGH, individually and also doing business as CMB MARKETING, INC., and as a manager of ALL SQUARE MARKETING, LLC, | ) | |
| MICHAEL MAZZELLA, individually and also doing business as MAZZCO MARKETING, INC., and as an officer and manager of ALL SQUARE MARKETING, LLC, | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

- 1 -

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§  41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6.      Defendant SubscriberBASE Holdings, Inc. is a South Carolina corporation with its principal place of business at 3830 Forest Drive, Suite 207, Columbia, South Carolina 29204.

SubscribeBASE Holdings, Inc. transacts or has transacted business in this district and throughout the United States.

7.      Defendant SubscriberBASE, Inc. is a South Carolina corporation with its principal place of business at 3830 Forest Drive, Suite 207, Columbia, South Carolina 29204. SubscribeBASE, Inc. transacts or has transacted business in this district and throughout the United States.

8.      Defendant Jeffrey French is the President and Chairman of SubscriberBASE Holdings, Inc. and the President of SubscriberBASE, Inc. At all times material to this Complaint, acting alone or in concert with others, French has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant French, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.      Defendant All Square Marketing, LLC ("All Square") is a California limited liability company with its registered address at 24000 Alicia Parkway Suite 17-433, Mission Viejo, California 92691.  All Square transacts or has transacted business in this district and throughout the United States.

10.      Defendant Threadpoint, LLC ("Threadpoint") is a California limited liability company with its registered address at 24881 Alicia Parkway, Suite E310, Laguna Hills, California 92653.  Threadpoint transacts or has transacted business in this district and throughout the United States.

11.      Defendant PC Global Investments, LLC ("PC Global") is a California limited liability company with its registered address at 27068 La Paz Road, Suite 566, Aliso Viejo,

California 92656. PC Global transacts or has transacted business in this district and throughout the United States.

12. Defendant Slash 20, LLC ("Slash 20") is a Delaware limited liability company with its registered address at 225 South State Street, Dover, Delaware 19901. Slash 20 transacts or has transacted business in this district and throughout the United States.

13. Defendant Brent Cranmer is an officer and manager of All Square, PC Global, and Slash 20. At all times material to this Complaint, acting alone or in concert with others, Cranmer has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Cranmer, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

14. Defendant Christopher McVeigh, who also does business as CMB Marketing, Inc., is a manager of All Square. At all times material to this Complaint, acting alone or in concert with others, McVeigh has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant McVeigh, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15. Defendant Michael Mazzella, who also does business as Mazzco Marketing, Inc., is an officer and manager of All Square. At all times material to this Complaint, acting alone or in concert with others, Mazzella has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Mazzella, in

connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

16.     Defendants SubscriberBASE Holdings, Inc. and Subscriber BASE, Inc. (collectively, "the SubscriberBASE Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below. The SubscriberBASE Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations. Because the SubscriberBASE Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant French has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the SubscriberBASE Defendants that constitute the common enterprise.

17.     Defendants All Square, Threadpoint, PC Global, and Slash 20 (collectively, the "All Square Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below. The All Square Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that commingled funds. Because the All Square Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Cranmer, McVeigh, and Mazzella have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the All Square Defendants that constitute the common enterprise.

- 5 -

## COMMERCE

18.     At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

19.     Since at least July 2011, and continuing to the present, the SubscriberBASE Defendants have offered to consumers purportedly free merchandise, such as $1,000 gift cards to large retailers, and products such as an Apple iPad.  (Such products and items are referred to herein as "promised free merchandise.")  The SubscriberBASE Defendants advertise the promised free merchandise on various websites they operate, including mywebrewardsclub.com and bestdigitalrewards.com (the "SubscriberBASE websites").

20.     Since at least July 2011, and continuing to the present, the All Square Defendants have marketed, on behalf and for the benefit of the SubscriberBASE Defendants, the promised free merchandise through various means, including on various websites that they operate, including thetopoffersforu.com, thebestsiteforgiftcards.com, bestgiftcardsforu.com, and mygiftcardsnow.com (the "All Square websites").  The All Square websites contain links that lead consumers to the SubscriberBASE websites to claim the promised free merchandise.

## Text Message Spam

21.     Defendants attract consumers to the All Square websites and, in turn, to the SubscriberBASE websites, through various means, including unsolicited commercial electronic text messages ("text message spam") that are sent by third parties acting on Defendants' behalf and for their benefit.  Defendants, either directly or indirectly through an intermediary, pay these

third parties for driving consumer traffic to Defendants' websites through text message spam. Defendants are responsible for the transmission and content of this text message spam.

22.     Many such text messages represent, expressly or by implication, that the consumer receiving the message has won a contest, or has been specially selected to receive a gift or prize.  For example, the text messages contain statements such as, "Your entry in our drawing WON you a free $1,000 Best Buy GiftCard!" and "Dear Walmart shopper, your purchase last month won a $1000 Walmart Gift Card, go to [website address] within 24 hours to claim."

23.     The text message spam contains links that, when clicked on, take consumers to one of the websites described below.

## Text Message Spam Websites

24.     Some consumers who click on the link in the text message spam are first taken to a page that recapitulates and expands upon the initial promised free merchandise offer ("text message spam page").  The text message spam page is operated by the same third parties that send the text message spam, and those third parties are acting on behalf of and for the benefit of the All Square Defendants and the SubscriberBASE Defendants.  Defendants, either directly or indirectly through an intermediary, pay these third parties for driving consumer traffic to Defendants' websites through the text message spam pages.  Defendants are responsible for the content of these text message spam pages.  The text message spam page contains statements such as "You're [*sic*] Free Best Buy Gift Card!," or "Giftcard Giveaway" in large type.  Each text message spam page requires consumers to enter a "code" (sent as part of the text message spam) in a text box and click on a button labeled "Continue" to go to the next page.  Consumers who

provide their code on the text message spam page are told that they have a "winning code" and are then taken to a page on one of the All Square websites (the "landing page").

25.     In some instances, consumers who click on links in the text message spam are taken directly from the text message spam to the landing page without going through an intermediate text message spam page.

### The All Square Websites

26.     The landing page reinforces the message that the promised free merchandise is in fact "free" through statements such as, "Get a Free $1000 Best Buy Gift Card" or "Congratulations! You Qualify for a Free $1,000 Best Buy Gift Card" and asks consumers to submit their email address. Consumers who submit their email address and click "Continue" are taken to a second page on the All Square websites (the "registration page").

27.     At the top of the registration page, in bold type, is a message such as "Congratulations! Tell us where to send your $1000 Best Buy Gift Card." The registration page then directs consumers to fill out an online form eliciting personal information, including the consumer's gender, name, mailing address, e-mail address, date of birth, cell phone number, and home phone number. In many instances, consumers provide the requested personal information, believing they are doing so to enable Defendants to ship the promised free merchandise. The registration page also commonly asks consumers to answer questions such as "Are you a diabetic?," "Are you interested in going back to school?," and "Would you like FREE STUFF for you and your baby (or baby on the way) from babyfreepromos.com?" Under the form on the registration page is a button labeled "Continue" or "Go," which consumers must click to proceed.

**The SubscriberBASE Websites**

28.     Once consumers have submitted their personal information on the registration page and clicked on the "Continue" or "Go" button, they are led to a page on a SubscriberBASE website, which elicits their name and home address with a message such as, "Tell us where to ship your $1000 BestBuy Gift Card" or "Tell us where to ship your Apple new iPad [*sic*]" (the "offer pages").  As with the registration page, the offer pages lead consumers to believe that they are submitting their personal information in order to receive the promised free merchandise. The consumer is then required to fill out a form with his or her name and shipping address, or verify that pre-populated shipping information is accurate, and click on a button labeled "Send It!"

29.     After consumers complete the first offer page, the SubscriberBASE websites lead them through a series of web pages containing offers for various goods and services from third parties.  A consumer must accept (and often pay for) – in the parlance of the SubscriberBASE websites, "complete" or "participate in" – a certain number of offers made by third parties to qualify for the promised free merchandise.  The SubscriberBASE websites do not clearly and conspicuously disclose the costs and obligations associated with participating in the third-party promotions, such as applying and qualifying for credit cards.

30.     The consumer usually must complete a total of thirteen (13) offers in order to qualify for the promised free merchandise.  In addition to completing their own offers, consumers also must often refer three other persons to complete thirteen (13) offers each to qualify for the promised free merchandise.  Clicking on each offer reveals what the consumer must do to "complete" or "participate in" the offer.  In most cases, completing an offer entails

paying money or incurring some other obligation, such as applying and qualifying for credit cards.

31.     Some of the offers have free trial periods, but require consumers to participate for a minimum period of time to qualify for the promised free merchandise and to pay an initial shipping and handling charge.  Moreover, many of these offers also contain negative option components in which consumers who do not cancel will be billed automatically and indefinitely.

32.     In many instances, consumers stop trying to qualify for the promised free merchandise, whether because of the cost involved, because of the time and effort required, or because consumers thought that, by inputting their contact information and completing the landing page, registration page, or offer page, they qualified for the promised free merchandise. Consumers have expended money, provided sensitive personal information, or incurred other obligations in the pursuit of the promised free merchandise.  However, because they have not completed all of the required third-party promotions, consumers do not receive the promised free merchandise.

33.     In most if not all instances, it is impossible for a consumer to qualify for the promised free merchandise without spending money.

34.     The All Square websites, SubscriberBASE websites, and other websites operated by and for the benefit of the Defendants, including the landing pages, registration pages, and offer pages, do not clearly and conspicuously disclose that, to obtain the promised free merchandise, consumers must pay money or incur other costs or obligations.  These websites also do not clearly and conspicuously disclose that, to obtain the promised free merchandise, consumers must refer other persons to incur similar expenses or obligations.  Instead, the All

Square and SubscriberBASE websites attempt to qualify the representations about the promised free merchandise only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

35.     The All Square websites, SubscriberBASE websites, and other websites operated by and for the benefit of the Defendants, including the landing pages, registration pages, and offer pages, represent that Defendants collect consumers' personal information to send them the promised free merchandise.  However, few if any consumers ever receive the promised free merchandise, and Defendants instead proceed to sell or otherwise share with third parties the personal information they have collected.  These websites refer to sharing consumers' personal information only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

**The Recipients of Defendants' Text Message Spam**

36.     Many, if not all, of the consumers who received the text message spam sent on Defendants' behalf never agreed to be contacted by Defendants or those sending messages on their behalf.

37.     Some of the recipients of text message spam sent on Defendants' behalf have wireless service plans that require them to pay a fixed fee for each text message received by their wireless handsets.  Accordingly, such recipients were required to pay a fee for the receipt of text message spam sent on Defendants' behalf.

38.     Other recipients of text message spam sent on Defendants' behalf have wireless service plans that allow them a fixed, limited number of text messages per month without charge beyond their monthly service charge, with text messages that exceed the monthly allowance

billed on a per-message basis. Accordingly, many such recipients had their monthly allowance of text messages reduced upon receipt of each text message spam sent on Defendants' behalf.

39. The consumer injury caused by third parties on Defendants' behalf cannot be reasonably avoided by consumers. Text message spam sent on Defendants' behalf is routinely foisted upon consumers without their advance knowledge or permission. Many consumers who have requested to stop receiving text message spam sent on Defendants' behalf continued to receive text message spam after making the request.

40. Text message spam sent on Defendants' behalf does not create countervailing benefits to consumers or to competition that outweigh the harm caused by their unlawful activity.

## VIOLATIONS OF THE FTC ACT

41. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

42. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

43. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

44. In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, Defendants have represented, directly or indirectly, expressly or by implication, that promised free merchandise is without cost or obligation.

45.     In numerous instances in which Defendants have made the representation set forth in Paragraph 44 of this Complaint, Defendants have failed to disclose or to disclose adequately to consumers material terms and conditions of the offer, including:

      a.     that consumers must pay money or other consideration to obtain the promised free merchandise; and

      b.     the costs and obligations to obtain the promised free merchandise.

46.     Defendants' failure to disclose or to disclose adequately the material information described in Paragraph 45 above, in light of the representation described in Paragraph 44 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

47.     In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, Defendants have represented, directly or indirectly, expressly or by implication, that they collect consumers' personal information to send consumers the promised free merchandise.

48.     In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 47 of this Complaint, they collect consumers' personal information not to send consumers the promised free merchandise, but instead to sell or otherwise share that information with third parties.

49.     Therefore, Defendants' representation as set forth in Paragraph 47 of this Complaint is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

50.     In numerous instances, Defendants' practice of procuring for their benefit the transmission of unauthorized or unsolicited commercial electronic text messages to the mobile telephones and other wireless devices of consumers in the United States has caused or is likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

51.     Therefore, Defendants' practice as described in Paragraph 50 is unfair and violates Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## CONSUMER INJURY

52.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

53.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: February 28, 2013                        Respectfully submitted,

                                                DAVID C. SHONKA
                                                Acting General Counsel

                                                /s/ Matthew H. Wernz
                                                Matthew H. Wernz
                                                Steven M. Wernikoff
                                                Federal Trade Commission
                                                55 West Monroe Street, Suite 1825
                                                Chicago, IL 60603
                                                Tel.: (312) 960-5596
                                                Fax: (312) 960-5600
                                                Email: mwernz@ftc.gov
                                                Attorneys for Plaintiff
                                                Federal Trade Commission